WDM/DCG/CKD: USAO 2017R00357

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 MAR 14  PM 4: 56

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

CARLOS ROBERTO TEJADA-CRUZ,
    a/k/a Milton Ernesto Cabrera-Cruz,
    a/k/a "Krusty,"
KEVIN ALEXIS HERNANDEZ-
GUEVARA,
    a/k/a "Stop,"
ROLANDO ARISTIDES JUAREZ-
VELASQUEZ,
    a/k/a Rolando Aristides Juarez-
    Vasquez,
    a/k/a "Virus,"
    a/k/a "Daffy,"
JEFFRY RODRIGUEZ,
    a/k/a "Hyper,"
JUNIOR NOE ALVARADO-
REQUENO,
    a/k/a "Insolente,"
    a/k/a "Trankilo,"
MICHAEL EDUARDO CONTRERAS,
    a/k/a "Katra,"
    a/k/a "Insoportable,"
LUIS FERNANDO ORELLANA-
ESTRADA,
    a/k/a "Pinguino,"
DONALD ROBERTO MENDEZ-
LOPEZ,
    a/k/a "Chuckie,"
KEVIN ALEXANDER SORIANA-
HERNANDEZ,
    a/k/a "Brosha,"
CARLOS DANIEL CARDENAS-
BANEGAS,
    a/k/a "Perrico," and
WILFREDO CARDENAS-BANEGAS,
    a/k/a "Torro,"

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CRIMINAL NO. PX-17-0382

(Conspiracy to Participate in a
Racketeering Enterprise, 18 U.S.C.
§ 1962(d); Conspiracy to Commit
Murder in Aid of Racketeering,
18 U.S.C. § 1959(a)(5); Conspiracy
to Distribute and to Possess with
Intent to Distribute Controlled
Substances, 21 U.S.C. § 846;
Conspiracy to Interfere with
Interstate Commerce by Extortion,
18 U.S.C. § 1951(a); Forfeiture,
18 U.S.C. § 924(d), 21 U.S.C. § 853,
28 U.S.C. § 2461(c))

**LUIS ARNOLDO FLORES-REYES,**   *
    **a/k/a "Maloso,"**   *
    **a/k/a "Lobo,"**   *
               *
    **Defendants**   *
               *
            *******

## SIXTH SUPERSEDING INDICTMENT

### COUNT ONE
### (Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Sixth Superseding Indictment:

### Introduction

1.  *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Montgomery County and Prince George's County, and throughout the United States.

2.  The name "Mara Salvatrucha" was a combination of several slang terms. The word "Mara" was the term used in El Salvador for "gang." The phrase "Salvatrucha" was a combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

3.  In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland.

4. MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

5. **CARLOS ROBERTO TEJADA-CRUZ, a/k/a Milton Ernesto Cabrera-Cruz, a/k/a "Krusty"; KEVIN ALEXIS HERNANDEZ-GUEVARA, a/k/a "Stop"; ROLANDO ARISTIDES JUAREZ- VELASQUEZ, a/k/a Rolando Aristides Juarez-Vasquez, a/k/a "Virus," aka "Daffy"; JEFFRY RODRIGUEZ, a/k/a "Hyper"; JUNIOR NOE ALVARADO-REQUENO, a/k/a "Insolente," a/k/a "Trankilo"; MICHAEL EDUARDO CONTRERAS, a/k/a "Katra," a/k/a "Insoportable"; LUIS FERNANDO ORELLANA-ESTRADA, a/k/a "Pinguino"; DONALD ROBERTO MENDEZ-LOPEZ, a/k/a "Chuckie"; KEVIN ALEXANDER SORIANA-HERNANDEZ, a/k/a "Brosha"; CARLOS DANIEL CARDENAS-BANEGAS ("C. CARDENAS-BANEGAS"), a/k/a "Perrico"; WILFREDO CARDENAS-BANEGAS ("W. CARDENAS-BANEGAS"), a/k/a "Torro," and LUIS ARNOLDO FLORES-REYES, a/k/a "Maloso," a/k/a "Lobo"** were members and associates of MS-13.

6. Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members and associates sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying "mi vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members and associates have chosen not to have tattoos at all, or to have them

3

placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

7.     The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members and associates also wore blue and white clothing to represent their allegiance, including blue and white shoes such as the Nike "Cortez." As with tattoos, some MS-13 members and associates have selected more discreet ways of dressing in order to signify their membership and at the same time, avoid detection by law enforcement.

8.     MS-13 members and associates referred to one another by their "gang names," or monikers, and often did not know fellow gang members and associates except by their monikers.

9.     Members and associates of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members and associates were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13 had mottos consistent with its rules, beliefs, expectations, and reputation including "*mata, viola, controla*," which translates as, "kill, rape, control," and, "ver oir y callar," which means, "see nothing, hear nothing and say nothing."

10.     Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, extortion, and dealing in illegal controlled substances.  MS-13 members and associates were required to commit acts of violence to

maintain membership and discipline within the gang, as well as against rival gang members. Participation in criminal activity by a member or associate, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member or associate, resulted in that member or associate maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members, and persons seeking to become members, must attack and kill rivals whenever possible. Rivals were often referred to as "chavalas." MS-13, in the areas of Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street Gang, Latin Kings, Adelphi Crew, and Lewisdale Crew, among others.

11.     Prospective members who sought to join MS-13 were required to complete an initiation process. Individuals who associated with and were friends of the gang were called "paisas." Individuals who did favors and other acts for the gang were called "paros." Persons being observed by the gang for potential membership were known as "observations." Individuals who had advanced to the final level before being "jumped in" were called "chequeos," or "cheqs." Chequeos underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12.     MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region.  Cliques operated under the umbrella rules of MS-13.  MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.  In Maryland and the surrounding area, these cliques included Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Parkview Locos Salvatrucha ("PVLS"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Langley Park Salvatrucha ("LPS"), Weedoms Locos Salvatrucha ("Weedoms"), and Cabanas Locos Salvatruchas ("Cabanas").

13.     **TEJADA-CRUZ, HERNANDEZ-GUEVARA, JUAREZ-VELASQUEZ, RODRIGUEZ, ALVARADO-REQUENO, CONTRERAS, ORELLANA-ESTRADA, MENDEZ-LOPEZ, SORIANA-HERNANDEZ, C. CARDENAS-BANEGAS, W. CARDENAS-BANEGAS** and **FLORES-REYES** were members and associates of the Sailors Clique of MS-13.

14.     Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also referred to as "Primero Palabra," or "Shotcaller," or "Corredor," or "Runner." The "Second Word," or "Segundo Palabra," was the second-in-command of the clique. General members were required to take orders from the First Word or Runner and Second Word.

15.     MS-13 cliques kept in contact and reported to the supreme Runners for their respective cliques, who were oftentimes based in El Salvador. Cliques contacted their leaders based in El Salvador using mobile telephones during clique meetings to keep them updated on

6

gang business, for advice, and to resolve disagreements regarding operations among local cliques. Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

16.     MS-13 members and associates met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence. Each clique held clique meetings where business specific to that clique was discussed. Any perceived indiscretions by members and associates or violations of MS-13 rules were talked about at clique meetings and punishments known as "courts" or "violations" were issued. Courts or violations often took the form of beatings by fellow MS-13 members. More serious violations resulted in the issuance of a "greenlight." A greenlight was an order and/or approval to kill.

17.     MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques. Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

18.     MS-13 cliques would combine and work together for various purposes known as "programs." A person within the participating cliques would be selected as program leader.

19.     MS-13 received money and income from sources including member dues and the extortion, or "taxing," of brothels and other illegitimate businesses. Such funds, often referred to by MS-13 members and associates as "rent," were used for gang purposes, including obtaining

weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

20.     MS-13 members and associates communicated about gang activities with other MS-13 members and associates in Maryland and elsewhere using mobile telephones, text messages, social media such as Facebook and e-mail accounts, and other modes of communication. Further, MS-13 members and associates would promote MS-13 and its activities through the creation and dissemination of rap songs and other communication facilitated by various internet means. Additionally, MS-13 members and associates used transnational and international money wire transfers to conduct and promote gang activities.

### The Racketeering Enterprise

21.     MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

22.     The purposes of the Enterprise included:

        a.      Preserving and protecting the power, territory, and profits of the Enterprise through the use of intimidation and violence, including assaults, murders, and threats of violence;

        b.      Promoting and enhancing the Enterprise and its members' and associates' activities;

      c.       Enriching the members and associates of the Enterprise through extortion and the distribution of controlled substances;

      d.       Keeping victims and potential witnesses in fear of the Enterprise and in fear of its members and associates through threats of violence and actual violence; and

      e.       Providing assistance to members and associates in order to hinder, obstruct, and prevent law enforcement officers from identifying offenders, apprehending offenders, and trying and punishing offenders.

<b><u>Means and Methods of the Enterprise</u></b>

23.     Among the means and methods by which the defendants and others conducted and participated in the conduct of the affairs of the Enterprise were the following:

      a.       Members and associates of the Enterprise used, attempted to use, and conspired to use extortion;

      b.       Members and associates of the Enterprise obtained and distributed controlled substances;

      c.       Members and associates of the Enterprise committed, attempted, and threatened to commit acts of violence, including murder, to protect and expand the Enterprise's criminal operations;

      d.       Members and associates of the Enterprise promoted a climate of fear through violence and threats of violence; and

      e.       Members and associates of the Enterprise used and threatened to use physical violence against various individuals.

### The Racketeering Conspiracy

24.     Beginning on a date unknown to the Grand Jury, but at least prior to in or about

2015, and continuing through at least in or about January 2018, in the District of Maryland and

elsewhere,

**CARLOS ROBERTO TEJADA-CRUZ,**
a/k/a Milton Ernesto Cabrera-Cruz,
a/k/a "Krusty,"
**KEVIN ALEXIS HERNANDEZ-GUEVARA,**
a/k/a "Stop,"
**ROLANDO ARISTIDES JUAREZ-VELASQUEZ,**
a/k/a Rolando Aristides Juarez-Vasquez,
a/k/a "Virus,"
a/k/a "Daffy,"
**JEFFRY RODRIGUEZ,**
a/k/a "Hyper,"
**JUNIOR NOE ALVARADO-REQUENO,**
a/k/a "Insolente,"
a/k/a "Trankilo,"
**MICHAEL EDUARDO CONTRERAS,**
a/k/a "Katra,"
a/k/a "Insoportable,"
**LUIS FERNANDO ORELLANA- ESTRADA,**
a/k/a "Pinguino,"
**DONALD ROBERTO MENDEZ-LOPEZ,**
a/k/a "Chuckie,"
**KEVIN ALEXANDER SORIANA- HERNANDEZ,**
a/k/a "Brosha,"
**CARLOS DANIEL CARDENAS-BANEGAS,**
a/k/a "Perrico,"
**WILFREDO CARDENAS-BANEGAS,**
a/k/a "Torro," and
**LUIS ARNOLDO FLORES-REYES,**
a/k/a "Maloso,"
a/k/a "Lobo,"

being persons employed by and associated with MS-13, an enterprise engaged in, and the

activities of which affected, interstate and foreign commerce, together with others known and

unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate,

directly and indirectly, in the conduct of the affairs of MS-13 through a pattern of racketeering

activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity

consisted of: (1) multiple acts involving murder, in violation of Maryland Code, Criminal Law

§§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland, punishable

pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206; and

in violation of Texas Penal Code §§ 19.02, 15.01, 15.02, 7.01 and 7.02; (2) multiple acts

involving extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, and the

Common Law of Maryland; (3) multiple acts involving robbery, in violation of Maryland Code,

Criminal Law §§ 3-402 and 3-403; and (4) multiple offenses involving drug trafficking in

violation of 21 U.S.C. §§ 841 and 846.  It was part of the conspiracy that each defendant agreed

that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of

the Enterprise.

### **Manner and Means of the Racketeering Conspiracy**

25.     Among the manners and means used by the defendants and their co-conspirators

to achieve the objects of the conspiracy were the following:

a.      MS-13 members and associates met and communicated about, among

other things: the structure and organization of the gang; past criminal acts committed against

rival gang members and others; MS-13 members and associates who were arrested or

incarcerated; the disciplining of MS-13 members and associates; police interactions with MS-13

members and associates; the identities of individuals suspected of cooperating with law

enforcement and the proposed actions to be taken against them; plans and agreements regarding

the commission of future crimes, as well as ways to conceal these crimes; and the enforcement of gang rules.

b.      MS-13 members and associates agreed to purchase, maintain, and circulate weapons and firearms for use in criminal activity by MS-13 members.

c.      MS-13 members and associates received money and income from sources including the extortion of persons engaged in business activities, and the distribution of controlled substances.  Such funds were used for gang purposes such as obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States (inside and outside of Maryland) and in El Salvador.

d.      MS-13 members and associates agreed that acts of violence, including murder and attempted murder, would be committed by members and associates of MS-13 against rival gang members and others when it suited the Enterprise's purposes. MS-13 members and associates also used violence to impose discipline within the gang.

e.      MS-13 members and associates would obstruct justice and harm, threaten, and intimidate witnesses and victims who cooperated with law enforcement.

f.      MS-13 members and associates would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets.

g.      MS-13 members and associates agreed that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons

deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

## Overt Acts

26.     In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

a.      Between in or about 2015 and in or about 2017, in the Langley Park area of Prince George's County, Maryland and the Wheaton area of Montgomery County, Maryland, **JUAREZ-VELASQUEZ, CONTRERAS, ORELLANA-ESTRADA, MENDEZ-LOPEZ, FLORES-REYES** and other MS-13 members and associates extorted sums of money from persons including owners and operators of illegal businesses, including brothels, illegal food and beer stores, and drug dealers, the proceeds of which benefited the gang.

b.      Between in or about 2015 and in or about 2017, **TEJADA-CRUZ, JUAREZ-VELASQUEZ, CONTRERAS, ORELLANA-ESTRADA,** and other MS-13 members and associates sent money obtained from the extortion of the owners and operators of illegal businesses to El Salvador. Often the money was sent to females in order to disguise the origin of the money as well as the purpose of the funds (which was to support MS-13 in El Salvador).

c.      Between in or around 2016 and in or around 2017, **ALVARADO-REQUENO, CONTRERAS,** and other MS-13 members and associates created and disseminated rap songs promoting MS-13 on various social media platforms.

13

d.      On or about May 27, 2016, **TEJADA-CRUZ** sent $300 by Western Union to a female in El Salvador.

e.      On or about June 15, 2016, and June 16, 2016, **ALVARADO-REQUENO** planned with and directed other MS-13 members and associates to murder Victim-1, who was believed to be a member of the 18th Street gang.

f.      Pursuant to the plan and as directed by **ALVARADO-REQUENO**, on or about June 16, 2016, MS-13 members and associates murdered Victim-1 in Gaithersburg, Maryland.

g.      On or about July 23, 2016, **TEJADA-CRUZ** sent $300 by Western Union to a female in El Salvador.

h.      Between in or about 2015 and in or about 2018, in the Langley Park area of Prince George's County, Maryland, **TEJADA-CRUZ, HERNANDEZ-GUEVARA, RODRIGUEZ, CONTRERAS, ORELLANA-ESTRADA, MENDEZ-LOPEZ, FLORES-REYES** and other MS-13 members and associates distributed marijuana, cocaine, and heroin, the proceeds of which benefited the gang.

i.      On or about July 29, 2016, **TEJADA-CRUZ, HERNANDEZ-GUEVARA**, and other members and associates of MS-13 planned to murder Victim-2.

j.      Pursuant to the plan to murder Victim-2, on or about July 29, 2016, two members and associates of MS-13 lured Victim-2 (who was believed to be a rival gang member) to a secluded location in Hyattsville, Maryland, and then **TEJADA-CRUZ** attempted to shoot Victim-2 when Victim-2 arrived at the secluded location.

k.      On or about July 29, 2016, when Victim-2 attempted to flee, one of the members and associates of MS-13 chased down Victim-2, and then **TEJADA-CRUZ** and other members and associates of MS-13 stabbed Victim-2.

l.      On or about July 29, 2016, **HERNANDEZ-GUEVARA** picked up the shell casings from the shots fired by **TEJADA-CRUZ** at Victim-2.

m.     On or about August 9, 2016, **TEJADA-CRUZ, HERNANDEZ-GUEVARA**, and **RODRIGUEZ** planned to purchase marijuana to sell.

n.      On or about August 9, 2016, **HERNANDEZ-GUEVARA** and **RODRIGUEZ** entered a car in the Hyattsville, Maryland area with the intent of obtaining marijuana.

o.      On or about August 9, 2016, **HERNANDEZ-GUEVARA** and **RODRIGUEZ** attempted to steal marijuana by brandishing a firearm and knife.

p.      On or about August 9, 2016, during the course of the attempted robbery by **HERNANDEZ-GUEVARA** and **RODRIGUEZ**, Victim-3 was shot and stabbed and Victim-4 was shot.

q.      On or about August 9, 2016, when questioned regarding the robbery, **TEJADA-CRUZ** provided false and misleading information to the police.

r.      On or about October 26, 2016, **JUAREZ-VELASQUEZ** sent $200 by Western Union to a female in El Salvador.

s.      On or about October 31, 2016, **JUAREZ-VELASQUEZ** sent $100 by Western Union to a female in El Salvador.

t.      On or about November 5, 2016, **CONTRERAS** sent $300 by Western Union to a female in El Salvador.

u.      On or about November 12, 2016, **JUAREZ-VELASQUEZ** sent $250 by Western Union to a female in El Salvador.

v.      On or about November 15, 2016, **JUAREZ-VELASQUEZ** sent $200 by Western Union to a female in El Salvador.

w.      On or about December 6, 2016, **JUAREZ-VELASQUEZ** sent $400 by Western Union to a female in El Salvador.

x.      On or about March 20, 2017, in the Langley Park area of Prince George's County, Maryland, an MS-13 member and associate collected "rent" from Victim-5.

y.      On or about March 27, 2017, **CONTRERAS** arranged for members of the Sailors Clique of MS-13 to travel from Maryland to Lynchburg, Virginia, where they met with other MS-13 members and associates.

z.      On or about March 27, 2017, members and associates of the Sailors Clique of MS-13, including persons who had traveled from Maryland as arranged by **CONTRERAS**, murdered Victim-6 in Bedford County, Virginia.

aa.     On or about April 10, 2017, in the Langley Park area of Prince George's County, Maryland, an MS-13 member and associate collected "rent" from Victim-5.

bb.     On or about April 30, 2017, in the Langley Park area of Prince George's County, Maryland, an MS-13 member and associate collected "rent" from Victim-5.

cc.     In or around April 2017, **MENDEZ-LOPEZ** and another MS-13 member and associate planned and discussed how they would have to kill a rival in order to be promoted within the Sailors Clique of MS-13.

dd.     In or around April 2017, **MENDEZ-LOPEZ** and another MS-13 member and associate targeted Victim-7, a homeless person who was living in a wooden shed on an electric line right of way in the Hyattsville, Maryland area, as a person to attack in order to be promoted within the Sailors Clique of MS-13.

ee.     In or around April or May of 2017, **MENDEZ-LOPEZ** aided and abetted another MS-13 member who murdered Victim-7, by stabbing and beating him to death, leaving the body of Victim-7 in the shed.  The body of Victim-7 was found on or about May 15, 2017.

ff.     In or around May or June of 2017, **MENDEZ-LOPEZ** and the other MS-13 member and associate who participated in the murder of Victim-7, were promoted to the rank of chequeo within the Sailors Clique of MS-13 as a result of their killing of Victim-7.

gg.     On or about June 1, 2017, in the Adelphi area of Prince George's County, Maryland, **JUAREZ-VELASQUEZ**, together with other members and associates of MS-13, began exchanging words with Victim-8 and throwing MS-13 gang signs.

hh.     On or about June 1, 2017, **JUAREZ-VELASQUEZ** shot Victim-8 in the head, killing Victim-8.

ii.     Between on or about June 1, 2017, and on or about June 5, 2017, **ALVARADO-REQUENO** and other MS-13 members and associates assisted **JUAREZ-VELASQUEZ** in evading arrest for the murder of Victim-8.

jj.     On or about June 9, 2017, in the Langley Park area of Prince George's County, Maryland, **ORELLANA-ESTRADA** collected "rent" from Victim-5.

kk.     On or about June 15, 2017, **ORELLANA-ESTRADA** sent $400 by Western Union to a female in El Salvador.

ll.     On or about June 16, 2017, in the Langley Park area of Prince George's County, Maryland, **ORELLANA-ESTRADA** collected "rent" from Victim-5.

mm.     On or about June 30, 2017, in the Langley Park area of Prince George's County, Maryland, **ORELLANA-ESTRADA** collected "rent" from Victim-5.

nn.     On or about July 21, 2017, in the Langley Park area of Prince George's County, **MENDEZ-LOPEZ** collected "rent" from Victim-5.

oo.     On or about August 4, 2017, in the Langley Park area of Prince George's County, **MENDEZ-LOPEZ** collected "rent" from Victim-5.

pp.     On or about September 16, 2017, **SORIANA-HERNANDEZ**, **C. CARDENAS-BANEGAS**, **W. CARDENAS-BANEGAS**, and others, planned to murder members of a rival gang in Riverdale, Maryland.

qq.     Following the plan to murder rival gang members, on or about September 16, 2017, in Riverdale, Maryland, **SORIANA-HERNANDEZ** shot at Victim-9, an individual whom he believed to be a rival gang member.

rr.     Following their plan to murder rival gang members, on or about September 16, 2017, in Riverdale, Maryland, **C. CARDENAS-BANEGAS** shot Victim-10 and **W. CARDENAS-BANEGAS** stabbed Victim-10 multiple times, while Victim-10 was seated in a car. **C. CARDENAS-BANEGAS** and **W. CARDENAS-BANEGAS** believed Victim-10 was

a rival gang member.  Victim-10 died as a result of being shot and stabbed by **C. CARDENAS-BANEGAS** and **W. CARDENAS-BANEGAS**.

   ss. On or about January 8, 2018, **FLORES-REYES** authorized and directed the beating of an MS-13 member as discipline for infractions against the gang.

   tt. On or about January 25, 2018, **FLORES-REYES** discussed with members of MS-13 the purchase of a gun to get revenge against members of a rival gang who were believed to have murdered an MS-13 member in Houston, Texas.

   uu. On or about January 25, 2018, **FLORES-REYES** gave directions that members of MS-13 in Houston, Texas should use the gun against rival gang members who were believed to have murdered an MS-13 member.

   vv. On or about January 27, 2018, **FLORES-REYES** gave directions that members of MS-13 in Houston, Texas should shoot the targeted rival gang members if they wanted to be promoted.

   ww. On or about January 28, 2018, members of MS-13 in Houston, Texas shot at and attempted to kill suspected rival gang members while **FLORES-REYES** and other MS-13 members, including MS-13 members in El Salvador, monitored the shooting by phone.

   xx. On or about January 28, 2018, **FLORES-REYES** informed members of MS-13 in Houston, Texas that they were required to confirm whether they had killed the targets of the shooting that day.

## **Special Sentencing Factors Regarding Count One**

27.     On or about June 15, 2016, and June 16, 2016, in the District of Maryland, **ALVARADO-REQUENO** unlawfully conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, murder Victim-1, in violation of Maryland Code, Criminal Law § 2-201(a)(1), and the common law of Maryland, and punishable pursuant to Maryland Code Criminal Law § 1-202.

28.     On or about July 29, 2016, in the District of Maryland, **TEJADA-CRUZ** and **HERNANDEZ-GUEVARA** unlawfully conspired with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, murder Victim-2, in violation of Maryland Code, Criminal Law § 2-201(a)(1), and the common law of Maryland, and punishable pursuant to Maryland Code Criminal Law § 1-202.

29.     On or about July 29, 2016, in the District of Maryland, **TEJADA-CRUZ** and **HERNANDEZ-GUEVARA** feloniously, willfully, and with deliberately premeditated malice, murdered Victim-2, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

30.     On or about June 1, 2017, in the District of Maryland, **JUAREZ-VELASQUEZ** feloniously, willfully, and with deliberately premeditated malice, murdered Victim-8, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

31.     On or about September 16, 2017, **SORIANA-HERNANDEZ, C. CARDENAS-BANEGAS**, and **W. CARDENAS-BANEGAS** unlawfully conspired with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, murder Victim-9 and Victim-10, in violation of Maryland Code, Criminal

Law § 2-201(a)(1), and the common law of Maryland, and punishable pursuant to Maryland Code Criminal Law § 1-202.

32.     On or about September 16, 2017, **SORIANA-HERNANDEZ** feloniously, willfully and with deliberately premeditated malice, attempted to murder Victim-9, in violation of Maryland Code, Criminal Law §§ 2-201(a)(1), and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 2-205.

33.     On or about September 16, 2017, **C. CARDENAS-BANEGAS**, and **W. CARDENAS-BANEGAS** feloniously, willfully, and with deliberately premeditated malice, murdered Victim-10, in violation of Maryland Code, Criminal Law § 2-201(a)(1).


18 U.S.C. § 1962(d)

**COUNT TWO**
**(Conspiracy to Commit Murder in Aid of Racketeering)**

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 22 and 26(i) through (l) of Count One of this Sixth Superseding Indictment are incorporated herein.

2.      MS-13, including its leaders, members, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

The above-described enterprise, MS-13, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, (1) multiple acts involving murder, in violation of Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206; (2) multiple acts involving extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, and the Common Law of Maryland; (3) multiple acts involving robbery, in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403; and (4) multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841 and 846.

3.      On or about July 29, 2016, in the District of Maryland and elsewhere, the defendants,

**CARLOS ROBERTO TEJADA-CRUZ,**
**a/k/a Milton Ernesto Cabrera-Cruz,**
**a/k/a "Krusty," and**

22

**KEVIN ALEXIS HERNANDEZ-GUEVARA,**
**a/k/a "Stop,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an

enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire,

confederate and agree with each other and others known and unknown to the Grand Jury to

murder Victim-2, in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, and 1-202, and

the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).


18 U.S.C. § 1959(a)(5)

## COUNT THREE
**(Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances)**

The Grand Jury for the District of Maryland further charges that:

1.      Beginning at least in or about January 2017, and continuing through at least on or about January 30, 2018, in the District of Maryland and elsewhere, the defendants,

**MICHAEL EDUARDO CONTRERAS,**
a/k/a "Katra,"
a/k/a "Insoportable,"
**LUIS ARNOLDO FLORES-REYES,**
a/k/a "Maloso,"
a/k/a "Lobo,"

did knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to distribute and to possess with the intent to distribute: (1) a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance; (2) a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance; and (3) 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).


21 U.S.C. § 846

## COUNT FOUR
### (Conspiracy to Interfere with Interstate Commerce by Extortion)

The Grand Jury for the District of Maryland further charges that:

At all times relevant to this Sixth Superseding Indictment:

### Introduction

1.      *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was an international criminal enterprise that was active throughout the United States.  In the Washington, D.C. metropolitan area, including in Prince George's County, Maryland, MS-13 generated income from various sources, including the extortion of sums of money from persons who engaged in business activities such as controlled substances sales, illegal brothels, and unlicensed "stores" where items such as food, alcoholic beverages, and cigarettes were sold.

2.      **LUIS FERNANDO ORELLANA-ESTRADA, a/k/a "Pinguino," DONALD ROBERTO MENDEZ-LOPEZ, a/k/a "Chuckie," and LUIS ARNOLDO FLORES-REYES, a/k/a "Maloso," a/k/a "Lobo,"** were members and associates of MS-13 and the "Sailors" clique of MS-13.

3.      Victim-5 operated a business that affected interstate commerce.

### The Charge

4.      Beginning at least in or about June 2017, and continuing through at least on or about August 10, 2017, in the District of Maryland and elsewhere, the defendants,

**LUIS FERNANDO ORELLANA-ESTRADA,**
**a/k/a "Pinguino,"**
**DONALD ROBERTO MENDEZ-LOPEZ,**
**a/k/a "Chuckie," and**
**LUIS ARNOLDO FLORES-REYES,**
**a/k/a "Maloso,"**
**a/k/a "Lobo,"**

25

did knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to obstruct, delay, and affect commerce and the movement of any article and commodity in commerce by extortion, as those terms are defined in 18 U.S.C. § 1951, to wit, the defendants conspired to obtain the property of Victim-5, with Victim-5's consent induced by the wrongful use of actual and threatened force, violence, and fear.

18 U.S.C. § 1951(a)

## FORFEITURE ALLEGATIONS

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 1963(a); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c), in the event of the defendants' convictions on Counts One, Three, and Four of this Sixth Superseding Indictment.

### RICO Forfeiture

2.      Pursuant to Title 18, United States Code, Section 1963(a)(1) and (3), upon a conviction of an offense in violation of Title 18, United States Code, Section 1962, as alleged in Count One of this Sixth Superseding Indictment, the defendants,

**CARLOS ROBERTO TEJADA-CRUZ,**
**a/k/a Milton Ernesto Cabrera-Cruz,**
**a/k/a "Krusty,"**
**KEVIN ALEXIS HERNANDEZ-GUEVARA,**
**a/k/a "Stop,"**
**ROLANDO ARISTIDES JUAREZ-VELASQUEZ**
**a/k/a Rolando Aristides Juarez-Vasquez,**
**a/k/a "Virus,"**
**a/k/a "Daffy,"**
**JEFFRY RODRIGUEZ,**
**a/k/a "Hyper,"**
**JUNIOR NOE ALVARADO-REQUENO,**
**a/k/a "Insolente,"**
**a/k/a "Trankilo,"**
**MICHAEL EDUARDO CONTRERAS,**
**a/k/a "Katra,"**
**a/k/a "Insoportable,"**
**LUIS FERNANDO ORELLANA- ESTRADA,**
**a/k/a "Pinguino,"**
**DONALD ROBERTO MENDEZ-LOPEZ,**
**a/k/a "Chuckie,"**

**KEVIN ALEXANDER SORIANA-HERNANDEZ,**
a/k/a "Brosha,"
**CARLOS DANIEL CARDENAS-BANEGAS,**
a/k/a "Perrico,"
**WILFREDO CARDENAS-BANEGAS,**
a/k/a "Torro," and
**LUIS ARNOLDO FLORES-REYES,**
a/k/a "Maloso,"
a/k/a "Lobo,"

shall forfeit to the United States of America any interest acquired and maintained in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1); and any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

**Narcotics Forfeiture**

3.      Pursuant to Title 21, United States Code, Section 853(a), upon conviction of an offense in violation of the Controlled Substances Act, as alleged in Count Three of this Sixth Superseding Indictment, the defendants,

**MICHAEL EDUARDO CONTRERAS,**
a/k/a "Katra,"
a/k/a "Insoportable,"
**LUIS ARNOLDO FLORES-REYES,**
a/k/a "Maloso,"
a/k/a "Lobo,"

shall forfeit to the United States of America:

a.   any other property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violations; and

28

b.   any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations.

### Extortion Forfeiture

4.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, upon a conviction of an offense in violation of Title 18, United States Code, Section 1951(a), as alleged in Count Four of this Sixth Superseding Indictment, the defendants,

**LUIS FERNANDO ORELLANA-ESTRADA,**
**a/k/a "Pinguino,"**
**DONALD ROBERTO MENDEZ-LOPEZ,**
**a/k/a "Chuckie," and**
**LUIS ARNOLDO FLORES-REYES,**
**a/k/a "Maloso,"**
**a/k/a "Lobo,"**

shall forfeit to the United States, all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

### Substitute Assets

5.      If any of the property described above, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

29

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

18 United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p).

18 U.S.C. §§ 981(a)(1)(C), 1963
21 U.S.C. § 853
28 U.S.C. § 2461(c)

Stephen M. Schenning
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: 03/14/18